UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CAMERON MILTON and MONIQUE SHOOP,

                    Plaintiffs,

    -against-

AMERICAN CREDIT ACCEPTANCE LLC,

                    Defendant.

------------------------------------------------------------------- x

REPORT & RECOMMENDATION

24-CV-2738 (OEM)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

In 2024, *pro se* Plaintiffs Monique Shoop and Cameron Milton sued Defendant American Credit Acceptance LLC ("ACA") in state court, alleging violations of state and federal consumer protection laws after Shoop's vehicle was repossessed. (*See generally* Compl., ECF No. 1-1.)[1] ACA timely removed the action to federal court. Before the Court is ACA's motion to compel arbitration and to stay this action. (Mot., ECF No. 10.) The Honorable Orelia E. Merchant referred the motion for report and recommendation. For the reasons stated below, the Court respectfully recommends that ACA's motion should be **granted**, and that the parties should submit a joint status report within 14 days after the arbitration.

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. \_\_\_") and pagination "\_\_\_ of \_\_\_" in the ECF header unless otherwise noted.

1

I.   **BACKGROUND**[2]

ACA is an indirect auto finance company with its principal place of business in South Carolina. (Compl., ECF No. 1-1 at 5; Winn Decl., ECF No. 10-3 ¶ 3.) Milton and Shoop reside in Brooklyn, New York. (Compl., ECF No. 1-1 at 5.)

On or about July 31, 2023, Shoop entered a retail installment agreement (the "Contract") with ELRAC, LLC, a car dealer, to buy a used 2021 Chrysler Pacifica with Vehicle Identification No. ("VIN") ending in 527347 ("the Vehicle"). (*Id*. at 3; *see generally* Winn Decl. Ex. 1 ("Contract"), ECF No. 10-4.) On the same day, Milton registered the Vehicle with the State of New York and deposited payment to satisfy the Contract. (Compl., ECF No. 1-1 at 3; *see also id.* Ex. C, ECF No. 1-1 at 17.) Milton also insured the Vehicle. (*Id*. at 6.)

Under the Contract, Shoop agreed to make monthly payments beginning in September 2023; if she did not, the Vehicle could be taken from her. (Contract, ECF No. 10-4 at 1, 4 § 3(d).) The Contract also included an arbitration provision (the "Arbitration Provision"), which states in relevant part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Contract, ECF No. 10-4 at 6.) Immediately above the Arbitration Provision, the Contract states: "**Agreement to Arbitration**: By signing below, you agree that, pursuant to the

---

[2] The Court relies on the Complaint (ECF No. 1-1), the Complaint's exhibits (ECF Nos. 1-1 at 9–27) and the parties' submissions on the motion (ECF Nos. 10–11).

2

Arbitration Provision below, you and we may elect to resolve any dispute by neutral binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate." (*Id.*)

On August 2, 2023, ELRAC sold, transferred, and assigned to ACA "all rights, title and interest" in the Contract, "all obligations" of Shoop thereunder, and all liens and security interests in the Vehicle under the Contract's assignment provision. (Winn Decl., ECF No. 10-3 ¶¶ 6, 8; *id.* Ex. 2, ECF No. 10-5 at 2, 7.) The Vehicle's title certificate, issued on December 19, 2023, also listed ACA as the lien holder. (Compl. Ex. B, ECF No. 1-1 at 14.)

Shoop defaulted under the terms of the Contract because no payments were made in October, November, and December 2023 toward the outstanding balance due on the Vehicle. (*See* Compl. Ex. A, ECF No. 1-1 at 10.) On or about January 9, 2024, nonparty Loss Prevention Service LLC ("LPS") "harassed and endangered" Milton while trying to repossess the Vehicle. (Compl., ECF No. 1-1 at 3 ¶¶ 1–3.)[3] ACA unlawfully disclosed their non-public information to LPS, and LPS seized the Vehicle on ACA's behalf on January 11, 2024. (*Id.* at 5, 6.) ACA sent a notice to Shoop, dated January 12, 2024, stating that ACA had obtained possession of the Vehicle, either by repossession or voluntary surrender. (*See* Compl. Ex. A, ECF No. 1-1 at 10.)

Plaintiffs commenced this action against ACA in April 2024, seeking compensatory and punitive damages. (*See* Compl., ECF No. 1-1 at 7.) Liberally construed, Plaintiffs' allegations raise the following legal claims: (1) unfair debt collection practices, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (2) unlawful repossession, in

---

[3] All quotations from the Complaint are verbatim without changes for spelling or grammar.

3

violation of New York Uniform Commercial Code § 9-609(b)(2); (3) deceptive acts or practices, in violation of New York General Business Law § 349; and (4) unlawful disclosure of nonpublic information, in violation of New York Civil Rights Law § 50-C. (*See generally id.*)[4] ACA immediately requested a pre-motion conference for an anticipated motion to compel arbitration, which Plaintiffs opposed. (Def. Ltr., ECF No. 2; Pls.' Ltrs., ECF Nos. 6–7.) The parties appeared at a hearing on September 6, 2024 and the Court set a briefing schedule. (ECF No. 9; Tr., ECF No. 13.) ACA filed the instant motion on October 3, 2024, and the motion was fully briefed as of November 18, 2024. (Mot., ECF No. 10; Pls.' Opp'n, ECF No. 11; Def. Reply, ECF No. 12.) Judge Merchant referred the motion for report and recommendation. (Oct. 25, 2024 Order.)

## II.  **LEGAL STANDARDS**

Pursuant to the Federal Arbitration Act ("FAA"), a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party may move for an order compelling arbitration, and the court must grant the motion "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.* § 4; *Arnaud v. Doctor's Assocs. Inc.*, No. 18-CV-3703 (NGG)(SJB), 2019 WL 4279268, at *3 (E.D.N.Y. Sept. 10, 2019) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 354–55 (2011)); *aff'd*, 821 F. App'x 54 (2d Cir. 2020).

---

[4] Plaintiffs also cite to various criminal statutes for which no private right of action exists. (*See* Compl., ECF No. 1-2 at 3 ¶ 3, 4 ¶ 5, 6.)

4

"[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) and *AT&T Mobility*, 563 U.S. at 648–49); *see also Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 834 (2d Cir. 2021) ("[T]he FAA is not a substitute for contractual assent, and we will not enforce arbitration unless and until it is determined that an agreement exists."). Therefore, when considering a motion to compel arbitration, the court must determine: (1) whether the parties agreed to arbitrate and (2) if so, the scope of that agreement. *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (cleaned up).

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made . . . . This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022) (citing *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251, 254 (2d Cir. 2019)). "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). "Ordinary principles of contract law guide the inquiry into whether an arbitration agreement was validly formed and whether the parties consented to arbitrate a particular dispute." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023) (citing *Granite Rock*, 561 U.S. at 296).

5

"In the context of motions to compel arbitration brought under [section 4 of the FAA], the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "The summary judgment standard requires a court to 'consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229.

Because Plaintiffs are proceeding *pro se*, the Court construes their submissions liberally, "interpreting them 'to raise the strongest arguments that they suggest.'" *Marino v. CVS Health*, 698 F. Supp. 3d 689, 694 (S.D.N.Y. 2023) (quoting *Bryant v. Wright*, 451 F. App'x 12, 13 (2d Cir. 2011)).

### III.    DISCUSSION

#### A.    Agreement to Arbitrate

"Whether an agreement to arbitrate exists between the parties is governed by state contract law." *Soliman*, 999 F.3d at 834; *Nicosia*, 834 F.3d at 229 ("The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles."). The Contract provides that it is governed by New York law. (*See* Contract, ECF No. 10-4 at 5 § 6.) "'To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound.'" *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 722 (E.D.N.Y. 2017) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).

6

1.   **Existence of the Agreement**

   a.   **Shoop**

ACA has met its burden to establish the existence of an arbitration agreement with Shoop. *See Zachman*, 49 F.4th 95 at 102. Shoop concedes that she "entered an installment agreement" for the Vehicle on or about July 31, 2023. (Compl., ECF No. 1-1 at 3 ¶ 1; *see also* Pls.' Opp'n, ECF No. 11 at 7.) Consistent with Shoop's admission, ACA produced the Contract dated July 31, 2023 and bearing Shoop's electronic signature immediately above the Arbitration Provision. (Winn Decl. Ex. 1, ECF No. 10-4 at 6.) Shoop's electronic signature is also present in the Contract's signature block, which states:

> You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 5, before signing below. You confirm that you received a completely filled-in copy when you signed it.

(*Id*. at 7.) Under New York law, "a party who executes a contract is considered bound by the terms of that contract." *Stern v. Espeed, Inc.*, No. 06-CV-958 (PKC), 2006 WL 2741635, at *1 (S.D.N.Y. Sept. 22, 2006). When ELRAC assigned the Contract to ACA, it transferred to ACA all rights under the terms of the Contract, included the right to elect arbitration for disputes arising under the Contract. (*See* Winn Decl. Ex. 2, ECF No. 10-5 at 2.)

The Contract is an exhibit to the declaration of Zachary Winn, a Senior Continuous Improvement Specialist at ACA who is familiar with ACA's operations and record-keeping based on his experience at ACA. (Winn Decl., ECF No. 10-3 ¶ 2.) Winn is also familiar with and has access to ACA's records, including electronically stored records, related to Shoop and Milton's transactions with ACA. (Winn Decl., ECF No. 10-3 ¶ 4.) According to Winn, the records were "made at or near the time of the occurrences described in them by, or from

7

information transmitted by, a person with knowledge of the events and occurrences," and "it is the regular practice of ACA's business activities to make and rely on such records." (*Id.*) "As required to lay a proper foundation for the admission of a business record under [Federal Rule of Evidence] 803(6), [Winn] has demonstrated that he is a qualified witness, that the statements are based on personal knowledge or his review of [ACA's] business records, and that the documents were kept in the ordinary course of business." *Vitrano v. N.A.R., Inc.*, No. 18-CV-06754(KAM)(RLM), 2020 WL 1493620, at *8 (E.D.N.Y. Mar. 27, 2020) (citing *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014)).

For these reasons, ACA meets its burden to establish Shoop's agreement to arbitrate her claims against it.

### b. Milton

ACA also establishes an agreement to arbitrate Milton's claims against it, even though Milton did not sign the Contract. *See Zachman*, 49 F.4th 95 at 102.

"Under the estoppel theory, a party 'knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement.'" *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (cleaned up) (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995)). "'The benefits of exploiting the agreement, however, must flow directly from the agreement, rather than indirectly from the contractual relation of the parties to the agreement.'" *Vitol, Inc. v. Copape Produtos de Petroleo Ltda.*, No. 22-CV-10569 (JPC), 2024 WL 1216660, at *8 (S.D.N.Y. Mar. 21, 2024) (quoting *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567, 572 (2d Cir. 2020)); *see also MAG Portfolio Consult, GMBH*, 268 F.3d at 61 (defining indirect benefit as one "where the nonsignatory exploits the

8

contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself"). Where the benefits are merely "indirect," a nonsignatory cannot be compelled to arbitrate a claim. *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 631 (N.Y. 2013).

Here, the record establishes that Milton relied on benefits flowing directly from the Contract and therefore cannot deny his obligation to arbitrate his claims against ACA. It is undisputed that Milton was the primary driver of the Vehicle and, as such, (1) made payments upon Shoop's signing under the Contract's terms, and (2) registered and purchased insurance for the Vehicle as required under the Contract and New York State law. (Contract, ECF No. 10-4 at 5 § 2.d.; Compl. Exs F–G, ECF No. 1-1 at 23–26; Winn Decl., ECF No. 10-3 ¶ 7.) According to Milton, on or about July 29, 2023 (*i.e.*, two days before Shoop entered into the Contract), he applied for auto financing from ACA but was rejected, further supporting the conclusion that the Contract was intended to benefit him, not Shoop. (Pls.' Opp'n, ECF No. 11 at 7 ¶ 7 & Ex. A.)

Further, Milton is estopped from avoiding arbitration because he, as a non-signatory to the Contract, still filed suit against ACA based on the Contract. "Numerous courts have found that non-signatory parties are estopped from denying arbitration when they rely on or seek direct benefits under an agreement by, for example, bringing suit under that agreement." *Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 479 (S.D.N.Y. 2020) (collecting cases). While Milton argues that he is not relying on the Contract to prosecute this action (*see* Pls.' Opp'n, ECF No. 11 at 10), his claims against ACA arise from LPS's conduct in repossessing the Vehicle under the Contract. Milton alleges that "[LPS] put [him] in harm's way . . . and failed to repossess the property inter alia breached the peace under

9

the defendant's authority . . . ." (Compl., ECF No. 1-1 at 4 ¶¶ 3–4.) Both Plaintiffs allege that ACA "with the help of criminal solicitation conspired with [LPS] and executed an unlawful seizure of property," which "constitutes as an unlawful seizure due to the breach of peace . . . forfeiting the instrument as default," that "defendant's instrument is defective on its face and fraud due to the Breach of peace," and that they "discharge any debt from the breach of the contract due to the breach of peace[.]" (*Id*. at 3 ¶ 3; *id.* at 5, 6.) The "instrument" in question is the Contract, which includes the "debt" Shoop incurred upon signing, permits ACA's repossession of the Vehicle underlying Plaintiffs' claims, and requires arbitration of those claims. Plaintiffs also state, in their opposition, that "[t]he fact that defendant failed to notify the plaintiff (Milton) the right to reinstate is an additional claim inclusive to this action." (Pls.' Opp'n, ECF No. 11 at 11.) In other words, Milton relies on the Contract's provision that, if the Vehicle is repossessed, the buyer will receive notice and an opportunity to get the Vehicle back before it is sold. (Contract, ECF No. 10-4 at 5 § 3(e).) But Milton "cannot have it both ways. [He] cannot rely on the contract, when it works to [his] advantage, and repudiate it when it works to [his] disadvantage." *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 397 (E.D.N.Y. 2013) (quoting *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299 (S.D.N.Y. 1997)).

Accordingly, the Court respectfully recommends that Milton is estopped, under a direct benefits theory, from avoiding arbitration of his claims against ACA.

### 2. Plaintiffs' Challenges

Plaintiffs fail to raise any fact issue regarding the existence of the agreement to arbitrate. *Zachman*, 49 F.4th 95 at 101.

Plaintiffs argue that ACA did not produce an original signed copy of the Contract, pursuant to Federal Rule of Evidence 1002. (Pls.' Opp'n, ECF No. 11 at 6 ¶ 6.) But "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Plaintiffs do not raise a genuine question about the Contract's authenticity and the record does not reflect anything unfair about admitting the duplicate.[5]

Plaintiffs also argue that there is no agreement to arbitrate their claims because the assignment agreement identifies the Vehicle as "Chevrolet" instead of "Chrysler Pacifica" as stated in the Contract. (Pls.' Opp'n, ECF No. 11 at 6–7 ¶ 6.) "A scrivener's error occurs when 'the intention of the parties is identical at the time of the transaction, but the written agreement does not express that intention because of [the drafter's error].'" *AllCity Family Healthcare Ctr. Inc. v. Boss Surgical Grp., LLC*, No. 12-CV-6428 (NGG)(JMA), 2014 WL 13000602, at *7 (E.D.N.Y. Apr. 23, 2014) (quoting Williston on Contracts § 70:93 (4th ed. 2013)), *adopted as modified sub nom. by* 2014 WL 13000636 (E.D.N.Y. Aug. 13, 2014). Under New York law, the "scrivener's error" regarding the Vehicle's manufacturer can be corrected, *see id.*, but ultimately the error is irrelevant in this case. The assignment agreement is an admissible business record under Federal Rule of Evidence 803(b) for the same reasons as the Contract. (*See* § III.A.1.a., *supra*.) Further, the assignment agreement applies to Shoop's purchase of the Vehicle because it correctly lists Shoop as the buyer and the six digits of the VIN and that information matches the Contract and the Vehicle's title documents. (Contract, ECF No. 10-

---

[5] The Contract, by its terms, is an "electronic contract" that can be converted by printing a paper copy, which is the sole evidence of Shoop's obligations under the Contract. (*See* Contract, ECF No. 10-4 at 5 ("Electronic Contracting and Signature Acknowledgement".)

11

4 at 2; Compl. Ex. B, ECF No. 1-1 at 14.) Plaintiffs present no admissible evidence that the assignment agreement is not a valid document. *See AllCity Famly Healthcare Ctr. Inc.*, 2014 WL 13000602, at *7; *see also Vitrano*, 2020 WL 1493620, at *9. As such, the error in the assignment agreement has no effect on whether Plaintiffs agreed to arbitration.

Finally, Plaintiffs argue that the Arbitration Provision is vague and ambiguous because it states that disputes under the Contract may be resolved by arbitration "at your or our election." (Pls.' Opp'n, ECF No. 11 at 12 ¶ 23.) However, courts have recognized the enforceability of an arbitration agreement containing the same language. *See, e.g.*, *Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d 351, 357 (E.D.N.Y. 2015) (finding the arbitration clause enforceable which provided that "[a]ny claim or dispute . . . between you and us . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action . . .").

Based on the foregoing, an agreement to arbitrate exists between ACA and both Plaintiffs.

B. **Scope of Arbitration Provision**

When a court determines the existence of an agreement to arbitrate, it usually turns to whether the parties' disputes are within the scope of the agreement. *Daly*, 939 F.3d 415 at 421. But "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Mobile Real Est., LLC*, 460 F. Supp. 3d at 479 (quoting *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)). Importantly, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator,

a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).[6]

The Arbitration Provision states that "the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute" shall be submitted to the arbitrator. (Contract, ECF No. 10-4 at 6.) "'Such a delegation provision 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce' and is 'valid under § 2 save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Saizhang Guan*, 236 F. Supp. 3d at 727 (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). As noted, Shoop is bound to this provision as a signatory to the Contract. Milton is similarly bound because "[t]he direct benefits theory of estoppel is based in equity" and "[it] would eviscerate this principle to allow a non-party who invokes the contractual terms and directly benefits from doing so to then avoid arbitration by virtue of being a non-party to that contract." *Vitol*, 2024 WL 1216660, at *13. The Court therefore respectfully recommends that issues regarding whether both Plaintiffs' claims fall within the scope of the Arbitration Provision should be determined by the arbitrator.

### C. Stay of Action

When a court determines that arbitration is appropriate, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added); *see Smith v. Spizzirri*, 601

---

[6] ACA does not address this jurisprudence at all, instead arguing that the Arbitration Provision is broad enough in scope to encompass Plaintiffs' claims. (Def. Mem., ECF No. 10-6 at 9–11.)

U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.") In this case, a stay is required because both Plaintiffs are required to arbitrate their claims against ACA and ACA requests the stay pending arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 n.6 (2d Cir. 2015). Moreover, there is no evidence that ACA is "in default" in seeking to enforce the Arbitration Provision—indeed, ACA moved to compel arbitration almost immediately after removing this action to federal court. (*See* ECF No. 2.) Accordingly, the Court respectfully recommends a stay of this action pending completion of arbitration proceedings.

**IV.   CONCLUSION**

Based on the foregoing, the Court respectfully recommends that ACA's motion to compel arbitration at ECF No. 10 should be **granted** and this action should be stayed pending arbitration. The Court further recommends that, if the parties proceed to arbitration, then they shall submit a joint status report within 14 days of the resolution of the arbitration.

A copy of this Report and Recommendation is being served on ACA via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to each *pro se* Plaintiff at their respective address of record: Cameron Milton, 130 Lefferts Place Apt. 6A, Brooklyn, NY 11238, and Monique Shoop, 772 Jefferson Avenue, Brooklyn, NY 11221.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Merchant. If a

14

party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 1, 2025

        /s/ Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge